NATIONAL SURETY CORPORATION,
Appellant,

v.

W. T. MUSGROVE and William R. Caden-
head, Individually and as Partners Do-
ing Business as Musgrove Insurance
Agency, et al., Appellees.

No. 19409.

United States Court of Appeals
Fifth Circuit.

Oct. 17, 1962.

See also D.C.Ala., 191 F.Supp. 1.

James E. Clark, Birmingham, Ala., for appellant.

Neal C. Newell, Francis H. Hare, Birmingham, Ala., C. A. Poellnitz, Florence, Ala., for appellees.

Before CAMERON, WISDOM, and GEWIN, Circuit Judges.

WISDOM, Circuit Judge.

This appeal is a sequel to Continental Casualty Company v. Holmes, 5 Cir., 1959, 266 F.2d 269 and to Continental Casualty Co. v. Musgrove, 5 Cir., 1962, 305 F.2d 9. In the case before us now W. T. Musgrove and William R. Cadenhead ask for a declaratory judgment decreeing that National Surety Corporation is obligated to pay any sum between $1,000 and $300,000 which they shall become liable to pay because of their negligent breach of duty as insurance agents. The jury found for the plaintiffs. National Surety Corporation appeals.

This controversy arose out of a 1957 transaction between Oliver Wendell Holmes and the Musgrove Insurance Agency, a partnership composed of Musgrove and Cadenhead. At that time, Holmes was covered by a $50,000 aviation accident policy, insuring him against accidental death while riding as a passenger in an airplane. Musgrove, who was Holmes's insurance agent, had written Holmes:

"[Your] Aviation Accident Policy * * * should be rewritten since you are flying a plane by yourself; this is written on a passenger basis, and not a pilot, but you should have this changed to cover you as pilot of the plane, and I would appreciate your considering this and agreeing to change it. It will cost you more money but will give you the protection that is needed."

January 3, 1957, Holmes informed Musgrove that he wanted to extend the passenger policy to include coverage while piloting. Musgrove told him that from then on he was covered while flying as a pilot. Musgrove then gave a pencilled memorandum concerning the conversation to Cadenhead and instructed him to get Holmes's passenger policy endorsed, or a new policy issued, whichever was necessary in order to effect the extended coverage. At the same time Musgrove stated to Cadenhead that Holmes had purchased the coverage and was insured by oral binder.

On the following day, Cadenhead wrote Continental Casualty Company, with whom Holmes had his passenger policy:

"It is Mr. Holmes' wishes to also have pilot's coverage under this policy so will you please send us the necessary applications to have completed, or advise us what information you need. I am not sure what kind of plane he is flying but will secure this for you if necessary."

January 7, 1957, Herbert V. Holland, head of the Atlanta branch of Continental's Aviation-Travel Accident Division, replied as follows:

"We will be delighted to entertain Mr. Holme's [sic] application for Pilot Coverage, I am enclosing another application which we would like to have him complete and also a Pilot History Form which also must be submitted.

"Depending upon Mr. Holmes experience and needs of the insurance, it is possible that our underwriters would not like to write as much as

$50,000. principal sum for piloting. Completion of these two forms will help to determine this. If he should need only $25,000. while piloting, or that is all that could be written, we would be able to reduce the principal sum under the present policy to $25,000. All the present coverage is included in the Pilot Policy, so that he would have $50,000. just as he now has with $25,000. piloting. Of course, this is all problematical."

Cadenhead completed part of the application forms from information in his files. He also answered, "Yes," to Question 12, which was, "Do you understand and agree that no insurance will be effective until the policy is issued?" He later gave the forms to Holmes to be completed, and no more was said about them until February 20, when Holmes brought the application and pilot's history form to Musgrove's office. He inquired specifically about Question 12. Musgrove assured him that he had been covered while flying as a pilot since they first spoke of it and that the "Yes" answer to Question 12 "wouldn't make any difference, because he was under binder, and it was just a mere formality of getting the document or the policy to him." Musgrove testified that he thought Continental might just endorse the passenger policy, in which case the company would not need the application for a new policy.

The next day, while piloting a plane, Holmes was killed.

Holmes's death resulted in a complicated series of lawsuits. His widow, Mrs. Gladys Leith Holmes Southwick, sued Continental Casualty Company, alleging a valid oral binder by Musgrove. Continental impleaded Musgrove and Cadenhead as third-party defendants, contending that they were unauthorized to make an oral binder and should be liable to it for any judgment rendered in favor of Mrs. Holmes. On appeal, in Continental Casualty Co. v. Holmes, 5 Cir., 1959, 266 F.2d 269, this Court set aside a jury verdict for Mrs. Holmes and rendered judgment for Continental. Continental then sued Musgrove for damages sustained in defending the suit, but its action was dismissed in the federal courts for lack of the minimum jurisdictional amount. Continental Casualty Co. v. Musgrove, 5 Cir., 1962, 305 F.2d 9. Three days before the statute of limitations would have barred her claim, Mrs. Holmes brought suit in an Alabama state court against Musgrove and Cadenhead for damages suffered because of their negligent failure or omission to secure an effective binder from Continental. Musgrove and Cadenhead then made demand upon National Surety Corporation to defend the suit in accordance with the terms of the Insurance Agents' and Brokers' Errors and Omissions Policy which they carried with it, and upon National's denial of liability, they brought this declaratory judgment action.

Three clauses of the policy are particularly important. Paragraph One stipulates:

"This insurance, subject to the terms and conditions hereof, will pay on behalf of the assured all sums which the assured shall become obligated to pay by reason of liability for breach of duty as insurance brokers, insurance agents, or general insurance agents, claim for which is made against them during the period stated hereinbefore by reason of any negligent act, error or omission, whenever or wherever committed or alleged to have been committed on the part of the assured. * * *"

Paragraph Five gives the further protection to the insured that "the Company shall defend in insured's name and behalf any suit against the assured alleging such negligent act, error or omission, and seeking damages on account thereof even if such suit is groundless, false or fraudulent. * * *" These protections are, however, limited by the exclusions listed in Paragraph 7, which provides:

"This insurance shall not apply in respect of any claim

"a. For libel or slander;

"b. brought about or contributed to by the dishonest, fraudulent, crim-

inal, or malicious act or omission of the assured or any employee of the assured, or

"c. by any assurer arising out of any alleged negligent act, error or omission, by the insured in their capacity as insurance agents or general insurance agents, or insurance brokers of that assurer, unless that assurer has obtained a final judgment against the assured in any court in respect of that claim."

National Surety raises three basic defenses to liability under the policy. (1) In regard to liability for damages secured against appellees by Mrs. Holmes or by Continental, National Surety relies upon the Court's statement in Continental Casualty Company v. Holmes, 5 Cir., 1959, 266 F.2d 269, 281, that " * * * Musgrove knew that he did not have actual authority to accept risks and make contracts for Continental * * *," as having established by collateral estoppel that Musgrove acted "wilfully" rather than "negligently" in making a purported oral binder with Holmes. (2) National Surety insists that under Alabama law Musgrove's action in assuring Holmes that he was covered while flying as a pilot amounted to fraud, and not mere negligence. (3) National Surety urges that it is not liable under Paragraph 5 for any amount expended by appellees in defending the suit against them by Continental because Paragraph 7(c) specifically excludes liability on any claim by any insurer which has not been reduced to a final judgment.

If its three basic defenses are not accepted as matters of law, then, according to appellant, the judgment should be reversed for a new trial because of improper rulings made by the district judge on the admission and exclusion of evidence. Finally, National Surety urges that the district judge erred in allowing the jury demand of Mrs. Holmes, who, although originally brought in by appellees as a defendant, was realigned as a plaintiff. The appellant, however, apparently urges this as an error entitling this Court to weigh the evidence *de novo* and does not ask that the case be remanded for a nonjury trial.

### I.

There is little merit to appellant's contention that this is a proper case for the application of collateral estoppel. Neither the parties nor the issues are the same in this case as in Continental Casualty Co. v. Holmes, 5 Cir., 1959, 266 F.2d 269. In the earlier case, when Mrs. Holmes attempted to hold Continental on an oral binder by Musgrove, we held that Musgrove had no authority, either actual or apparent, to make such a binder. Here, the issue as between Musgrove and National Surety Corporation is whether Musgrove acted negligently or fraudulently in purporting to extend coverage. Musgrove, although having no actual or apparent authority to bind Holmes, could have acted negligently, but in good faith, in purporting to bind him. Moreover, the statement relied upon by appellant to prove that Musgrove acted wilfully does not, if taken in context, support appellant's position; much less was it fundamental to the holding in that case. We stated, "There was also undisputed evidence to show that Musgrove knew that he did not have actual authority to accept risks and make contracts for Continental * * *." 266 F.2d 269. In other words, there was evidence which was not in dispute showing Musgrove knew of his lack of authority. This statement does not exclude the possibility of other evidence showing that Musgrove did *not* know he lacked authority. It was, at most, an evaluation of the evidence; it did not constitute a holding on an issue basic to the case which could be determinative of a different issue in a later action between different litigants. See Hyman v. Regenstein, 5 Cir., 1958, 258 F.2d 502, 510.

### II.

Appellant strongly urges that Musgrove intentionally made a false representation to Holmes concerning his coverage. Both Cadenhead and Musgrove were aware of Question 12 on the application form, "Do you understand and agree

that no insurance will be effective until the policy is issued?" and that Cadenhead had written the answer, "Yes". But Musgrove testified that he thought the reservation of coverage would apply only if a new policy were issued, and not if Continental endorsed the passenger policy. Holland had told Musgrove to handle Continental's business as he handled all of his other insurance business and that he wanted him "to be a full agent for the Aviation Accident Division, Special Risk, Department of the Continental Casualty Company to secure business in Florence, Alabama * * * for his company." Both men were aware that Holland, head of the Atlanta branch of Continental's aviation-travel accident division, had effected a binder on the passenger policy procured by Holmes the previous year. On this state of the record, the jury could reasonably find that Musgrove was merely negligent in not ascertaining the extent of his authority before representing to Holmes that he had pilot's coverage.

In this respect, therefore, the present case is similar to Somer v. New Amsterdam Casualty Co., E.D.Mo.1959, 171 F. Supp. 84. In that case the defendant insurance company denied coverage on a professional insurance policy issued to a psychiatrist. The policy there in question provided that the company would pay "on behalf of insured all sums which insured shall become legally obligated to pay as damages because of injuries arising out of malpractice, error or mistake in rendering or failing to render professional services in the practice of the insured's profession * * *" and would defend "any suit against the insured alleging such injury and seeking damages on account thereof, even if such suit is groundless, false or fraudulent." The damages which the plaintiff sought to collect grew out of a charge that he had made an assault upon a patient by having him committed to a mental sanatorium. This, argued the insurance company, constituted a wilful act which, as a matter of law, was excluded from coverage. The trial judge, however, ruled that exclusions in insurance policies should be narrowly construed, and that the issue constituted a question of fact to be determined by the trier of fact. We agree. The question of whether Musgrove acted negligently or wilfully and fraudulently was a factual issue for jury determination. Bailey v. United States, 5 Cir., 1937, 92 F.2d 456.

■ This, however, does not dispose of the argument. National Surety insists that more than just ordinary fraud is excluded from coverage. Legal, or constructive fraud is also excluded; and here it relies on §§ 108 and 110 of Title 7 of the Alabama Code of 1940. The first of these sections provides:

"Misrepresentations of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitute legal fraud."

Musgrove, according to appellant, committed "legal fraud" under this definition when he recklessly assured Holmes that he was under binder without first ascertaining the extent of his authority. In fact, it insists that viewed in its worst light, Musgrove's action constituted deceit under section 110, which reads,

"Wilful misrepresentation of a material fact, made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of a falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood."

It is doubtful, however, that these statutory provisions were meant to apply to a definition of fraud in an insurance policy. Thus, in National Union Fire Ins. Co. v. Schwab, 241 Ala. 657, 4 So.2d 128 (1941), where the insurance company

invoked the defense of fraud or false swearing in making proof of loss, urging that there was "fraud in law in affirming as true what is untrue though not known to be so," the Alabama Supreme Court held that the code definitions had no application in determining the presence of fraud. The court said that "those statutes defining fraud and declaring its effect have reference by their terms to a situation where the opposite party acts in reliance on such representation to his damage." See also Fidelity & Casualty Co. v. J. D. Pittman Tractor Co., 1943, 244 Ala. 354, 13 So.2d 669, 671, where the Alabama Supreme Court in dealing with section 108 stated that "there is a distinction between suits brought against a party to the contract and suits brought against those not parties to it." Thus, although Musgrove's statement may have constituted fraud as between him and Holmes, it would not necessarily be "fraud" as used in the insurance policy.

■■ We find it unreasonable to believe that the ordinary insurance agent, taking out a policy to protect him in the event of professional negligence, would think that an exclusion "in respect of any claim * * * brought about or contributed to by the dishonest, fraudulent, criminal, or malicious act or omission of the Assured * * *" would encompass so all embracing a concept as "legal fraud." Words in the policy should be given their ordinary meaning, especially where, as here, the incorporation of the concept of legal or constructive fraud into the exclusion clause would rob the insured of the very coverage he assumed he was getting. Exclusions from coverage are construed against the insurer and in favor of providing the indemnity sought. New Amsterdam Casualty Co. v. Soileau, 5 Cir., 1948, 167 F.2d 767; Sheehee v. Aetna Casualty & Surety Co., W.D.La. 1954, 122 F.Supp. 1. Indeed, cases from this Court, such as Glens Falls Indemnity Co. v. National Floor & Supply Co., 5 Cir., 1956, 239 F.2d 412, and United States Fidelity & Guaranty Co. v. Bank of Thorsby, 5 Cir., 1931, 46 F.2d 950,

which appellant cites for the proposition that the words "fraud" and "dishonesty" are to be interpreted broadly when used in an insurance policy, actually stand for the proposition that the policy is to be construed in favor of broad coverage. Both cases involved policies indemnifying an employer for any loss sustained because of acts of personal dishonesty of their employees, and the Court gave a liberal meaning to words of *coverage*, not words of exclusion.

As a matter of law, we cannot say that Musgrove was guilty of fraud in his transaction with Holmes, nor did the trial judge commit reversible error in failing to instruct the jury as to sections 108 and 110 of Title 7 of the Alabama Code of 1940.

### III.

■ Does paragraph 7(c), excluding "any claim * * * by any assurer arising out of any alleged negligent act, error or omission, by the insured in their capacity as insurance agents * * * of that assurer unless that assurer has obtained a final judgment against the assured in any court in respect of that claim," limit paragraph 5, under which the company agrees to "defend in insured's name and behalf any suit against the assured alleging such negligent act, error or omission, and seeking damages on account thereof even if such suit is groundless, false or fraudulent. * * *"? We think not. If these clauses are construed together to give meaning to both, the exclusion the appellant urges would apply only to *claims* by Continental against Musgrove and Cadenhead; it does not apply to appellant's obligation to defend at all. Continental's complaint against Musgrove alleged that "it was wrongfully required to expend the sum of $25,000.00 in the successful defense of * * * [a suit based] upon the unwarranted and illegal action of its agent, Musgrove, in issuing the binder on Holmes' life." 305 F.2d 10, and listed in detail the circumstances surrounding the transaction. Such pleadings could not be said to exclude on their face the possibility of National Surety's liability under its policy

for Musgrove's professional negligence. Thus, National Surety Corporation was obligated to defend Continental's suit for damages against Musgrove; it would be liable to pay such damages as Continental was awarded, however, only when, and if, a final judgment was secured against Musgrove and Cadenhead on the basis of their negligent action. The manifest purpose of such an exclusionary clause is to protect National Surety from liability for trivial claims that are not intended to be prosecuted. Once having improperly refused to defend a claim alleging a negligent act, omission or error, appellant cannot then take refuge in the "final judgment" clause and deny liability for the costs of the defense.

### IV.

■ Most of appellant's objections to the trial judge's evidentiary rulings relate to the admission of parts of the record on appeal in Continental Casualty Co. v. Holmes, 5 Cir., 1959, 266 F.2d 269. This Court has consistently ruled in favor of a liberal policy in the admission of evidence, e. g., Dallas County v. Commercial Union Assurance Co., 5 Cir., 1961, 286 F.2d 388; Monarch Insurance Co. v. Spach, 5 Cir., 1960, 281 F.2d 401, where such evidence is "credible, relevant, probative * * * bearing directly on the truth of a significant issue." National Surety Co. v. Bellah, 5 Cir., 1957, 245 F.2d 936, 941. The appellant itself has relied heavily upon our decision in the Continental Casualty case and has urged that our findings there should be binding, or at least of overwhelming weight, on this appeal. We find that the trial judge's rulings on the evidence do not justify reversing and remanding for a new trial.

### V.

■ Finally, the appellant urges that this Court should weigh the evidence anew because of the trial court's error in allowing Mrs. Holmes' demand for a jury. This contention is based upon the proposition that under the Alabama Uniform Declaratory Judgments Act, a jury trial would not have been granted. This Court cannot, however, review the evidence and make findings *de novo*, especially in a case such as this one in which much depends upon the demeanor of the witnesses. See Rives, The Scope of Review of Facts by United States Courts of Appeals, 11 Alabama L.Rev. 70 (1958). If we assume appellant's contention that it was improperly denied a nonjury trial is correct, the logical remedy would be to remand the case for a trial without a jury. Appellant does not, however, request this form of relief. Indeed, such an action would be almost unprecedented. See Note, The Right to a Nonjury Trial, 74 Harv.L.Rev. 1176, 1184–86 (1961). It has been established at least since Beacon Theatres Inc. v. Westover, 1959, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988, that there is a strong policy in the federal courts favoring trial by jury. Cf. Byrd v. Blue Ridge Elec. Coop., 1958, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953. The trial judge's allowance of a jury trial did not constitute reversible or remediable error.

The judgment is

Affirmed.