CHERICK DISTRIBUTORS, INC. *vs.* POLAR CORPORATION.

No. 95-P-1369.

Worcester. May 10, 1996. - August 15, 1996.

Present: SMITH, PORADA, & IRELAND, JJ.

*Practice, Civil,* Directed verdict, Judgment notwithstanding verdict, Instructions to jury. *Contract,* Implied covenant of good faith and fair dealing, Termination. *Uniform Commercial Code,* Notice. *Unlawful Interference. Consumer Protection Act,* Unfair or deceptive act, Damages. *Damages,* Loss of profits, Consumer protection case.

. Sufficient evidence at a civil trial supported the jury's findings that the defendant's unreasonably short notice in cancelling a franchise agreement with the plaintiff constituted a breach of the covenant of good faith and fair dealing [126-127], that the defendant's conduct constituted tortious interference with the plaintiff's business relationships with its customers [127-128] and amounted to an unfair and deceptive act under G. L. c. 93A [128].

An award of damages by the jury in a civil action was reasonable. [128-129]

At a civil trial there was no error in the judge's charge, which addressed the essential elements of the claims and defenses in accordance with the applicable law. [129]

In a civil action that included a successful claim for wilful and knowing violation of G. L. c. 93A, the judge incorrectly computed the damages resulting in a wrong multiplication for the 93A claim, and the matter was remanded for modification of the judgment. [129-130]

CIVIL ACTION commenced in the Superior Court Department on November 25, 1992.

The case was tried before *Judd J. Carhart,* J.

*James C. Donnelly, Jr.* (*Charles B. Strauss, III,* with him) for the defendant.

*Roy A. Bourgeois* (*George L. Dresser* with him) for the plaintiff.

IRELAND, J. The defendant, Polar Corporation (Polar), appeals from a judgment entered for the plaintiff, Cherick Distributors, Inc. (Cherick), following a jury trial on the

plaintiff's claims for breach of the covenant of good faith and fair dealing, tortious interference with advantageous relationships, and violation of G. L. c. 93A. The complaint arises from Polar's termination of the plaintiff's exclusive distributorship agreement for the delivery of Polar beverages in certain areas of Massachusetts and Connecticut. On appeal, Polar contends that evidence was lacking to support the jury verdicts in Cherick's favor on the three claims, and that Polar's motions for a directed verdict and for judgment notwithstanding the verdict were improperly denied. Polar also challenges the judge's instructions to the jury and the judge's computation of damages.

A motion for a directed verdict or for judgment notwithstanding the verdict may be granted only when the evidence construed most favorably to the plaintiff is insufficient to support the verdict in its favor. *Alholm* v. *Wareham*, 371 Mass. 621, 627 (1976). The familiar standard is "whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.' " *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978). A reasonable inference is one that is based on probabilities and not the result of "mere speculation and conjecture." *Power Serv. Supply, Inc.* v. *E. W. Wiggins Airways, Inc.*, 9 Mass. App. Ct. 122, 127 (1980). Consistent with this standard, we address the defendants' arguments in turn.

1. *Breach of the covenant of good faith and fair dealing.* The evidence revealed that Polar terminated its unwritten distributorship agreement with Cherick upon discovering that Cherick's president, Richard Corey, had written a letter to other Polar distributors urging them to attend a meeting to discuss the possibility of forming an association to negotiate with Polar. As its reason for termination, Polar initially cited Cherick's expired letter of credit, which had expired a year and one-half earlier. However, Polar's vice president admitted that the letter of credit issue was a pretext. The termination of Cherick's contract was to take effect upon only four days' notice, on the eve of the distributors' scheduled meeting. On appeal, Polar counters that it was within its rights to terminate the at-will distributorship agreement at any time and for any reason, and that Cherick failed to prove that it could have found another beverage supplier even with a longer notice period.

"[T]he rule is clear in Massachusetts that every contract is subject to an implied covenant of good faith and fair dealing." *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 473 (1991). Good faith and fair dealing in a distributorship agreement may be construed, by analogy, with reference to the Uniform Commercial Code. See *Zapatha* v. *Dairy Mart, Inc.*, 381 Mass. 284, 291 (1980). General Laws c. 106, § 2-309(3), provides that a contract which is terminable at the will of either party requires reasonable termination notice. See *Teitelbaum* v. *Hallmark Cards, Inc.*, 25 Mass. App. Ct. 555, 560 (1988) (applying G. L. c. 106, § 2-309[3], to an at-will contract for the periodic supply of inventory to the plaintiffs' greeting card store). Whether the four-day termination notice constituted reasonable notice under commercial standards of good faith and fair dealing was a question properly put to the jury in this case. Compare *Teitelbaum* v. *Hallmark Cards, Inc., supra* at 560-561 (no jury question because the plaintiff procured another supplier before the notice period had expired).

The jury could have found that the abrupt termination of Cherick's distributorship agreement, coinciding as it did with the planned meeting of Polar distributors, was calculated to put Cherick out of business and thereby discourage other distributors from meeting. By the same token, the jury could have rejected Polar's assertion that the short notice period was for the purpose of protecting Polar's customers. The evidence indicated that the four-day notice left Cherick with no time to secure another supplier, make adjustments in its equipment and warehouse, and maintain its staff.[1] Accordingly, there was adequate support for the jury's finding that four days' notice was unreasonable and that it constituted a breach of the covenant of good faith and fair dealing.

2. *Tortious interference with advantageous relationships.* Cherick claimed that Polar's abrupt termination of the distributorship agreement wrongfully interfered with Cherick's relationships with Polar customers. On appeal,

---

[1]Corey testified that it took ninety days to line up another beverage supplier, by which time he had lost most of his employees. The business ultimately failed. We decline to read *Teitelbaum* v. *Hallmark Cards, Inc.*, 35 Mass. App. Ct. at 561, as requiring the plaintiff in these circumstances to establish that it could have procured an equivalent exclusive distributorship contract had it been given a longer notice period.

Polar asserts that there was no evidence that it interfered through improper motives or improper means, and that, in any event, it was free to terminate Cherick at any time and for any reason, rendering Polar's means and motive immaterial.

On the contrary, the jury found that the unreasonably short termination notice was a breach of the implied covenant of good faith and fair dealing. As such, the means used to effect the termination, and concomitant interference, could be found to be wrongful, not because Polar was prohibited from terminating the contract, but because it did so on unreasonably short notice. Moreover, the jury could infer that Polar's opportunistic timing, with the termination to take effect on the eve of the distributors' meeting, was more than mere coincidence. Compare *United Truck Leasing Corp.* v. *Geltman,* 406 Mass. 811, 817 (1990)(insufficient evidence to warrant a finding that the defendant's real motive was to hurt the plaintiff). These considerations do become relevant in an action for tortious interference. It was then up to the defendant to prove that its actions were justified. See *Draghetti* v. *Chmielewski,* 416 Mass. 808, 818 (1994). Polar's attempts at justification fell flat.[2]

3. *General Laws c. 93A.* Polar makes much of the evidence suggesting that Corey was not deceived by Polar's fabricated excuse for terminating the contract, namely Cherick's expired letter of credit. However, deception is only one prong of the prohibited conduct under G. L. c. 93A. The same evidence that supported the jury's findings of a breach of the covenant of good faith and fair dealing and tortious interference with advantageous relationships also supported the jury's finding that Polar's conduct amounted to an unfair or deceptive act under G. L. c. 93A. See, e.g., *Anthony's Pier Four, Inc.* v. *HBC Assocs.,* 411 Mass. at 474.

4. *Evidence of damages.* The jury awarded Cherick $25,000 in lost profits for Polar's wrongful interference with Cherick's advantageous relationships, and $50,000 to compensate for the loss of Cherick's business caused by Polar's breach of the

---

[2]Polar made no attempt to persuade the jury that the four-day termination notice was justified because Polar's business was being threatened by the distributors' scheduled meeting. Rather, Polar's defense focused on Cherick's expired letter of credit and on the need to maintain continuity of service to its customers — a defense the jury obviously found unpersuasive.

covenant of good faith and fair dealing. Polar maintains that there was no evidence of lost profits, nor could profits be inferred, because Cherick had lost money each year from its inception in 1987. However, the jury heard expert testimony that profits in a closed corporation may be subsumed in salaries and benefits to its shareholder employees. In addition, Polar's own controller testified that Polar made a pretax profit of between $24,000 and $33,000 in 1993, from its distribution of Polar beverages in Cherick's former territory after the termination. Viewing the evidence in the plaintiff's favor, the jury's award of $25,000 in lost profits finds support in the record.

As to Cherick's value as a going concern, Corey testified that a beverage distributorship business would be valued at one dollar per number of cases delivered annually. Based on the uncontroverted testimony that Cherick's territory yielded an annual distribution of 228,000 cases at the time of termination, the jury's award of $50,000 for the loss of business value would appear reasonable.

5. *Jury instructions.* On appeal, Polar advances numerous points of law that were omitted from the judge's charge to the jury. To begin with, we question whether Polar preserved its objections. We have previously cautioned that merely referencing or reciting proposed instructions, without informing the judge of the grounds for the objection, is unproductive in assisting the judge at trial. See, e.g., *Commonwealth* v. *Coast Vending Co.,* 12 Mass. App. Ct. 846, 850 (1981); *Mac-Cuish* v. *Volkswagenwerk A.G.,* 22 Mass. App. Ct. 380, 397 (1986), *S.C.,* 400 Mass. 1003 (1987). The record here demonstrates our point. Moreover, most of the defendant's proposed instructions do not accurately reflect Massachusetts law. In any event, the judge's charge addressed the essential elements of the claims and defenses in accordance with the applicable law, and we detect no error.

6. *Computation of damages.* It was appropriate that the judge attempted to harmonize the jury verdicts which, though consistent with respect to the substantive findings, failed to conform to the judge's instructions on damages.[3] However, the verdicts should be construed in light of the instructions

---

[3]Adding the verdicts on all three counts, the jury awarded a total of $175,000.

The plaintiff argues that Polar waived its objection to the G. L. c. 93A damages by failing to object before the jury were discharged. Unlike the

and the applicable law. See, e.g., *Charles River Constr. Co.* v. *Kirksey,* 20 Mass. App. Ct. 333, 343-344 (1985). See also *Shamrock, Inc.* v. *Federal Deposit Ins. Co.,* 36 Mass. App. Ct. 162, 169 (1994). The jury were repeatedly instructed that the damages under G. L. c. 93A would be the combined total of the damages awarded under the two common law counts. As there was no independent c. 93A claim apart from that derived from the same conduct that formed the basis of the common law claims, the award of any additional amount constituted cumulative damages for the same wrong. In these circumstances, the judge should have entered judgment under c. 93A in the amount of $75,000. See *Charles River Constr. Co.* v. *Kirksey,* 20 Mass. App. Ct. at 343-344 (the judge properly ordered the c. 93A damages subsumed in the contract damages, disregarding the jury's notation on the special verdict form that the G. L. c. 93A damages were not to be included in the award for contractual damages).

The judge further compounded the error by using the sum of the awards on all three counts, which was $175,000, as the amount to be multiplied for the willful and knowing violation of G. L. c. 93A. The proper amount to be trebled would be the damages derived from all claims arising out of the same and underlying transaction, which, in this case, was $75,000, the total of the two common law counts. This amount should be trebled, pursuant to the judge's c. 93A findings, which are not challenged on appeal.

Accordingly, we affirm the judge's denial of the defendant's motions for a directed verdict and for judgment notwithstanding the verdict. The judgment is modified to reduce the amount of damages on the G. L. c. 93A claim to $225,000, plus interest. In all other respects, the judgment is affirmed. The case is remanded to the Superior Court for entry of judgment as modified.[4]

*So ordered.*

cases relied upon by the plaintiff, Polar does not contend that the special verdicts were made upon inconsistent findings of fact. Rather, Polar challenges the manner in which the judge attempted to reconcile the c. 93A damages with those awarded pursuant to the common law counts. See, e.g., *Charles River Constr. Co.* v. *Kirksey,* 20 Mass. App. Ct. 333, 342-344 (1985).

[4]We decline to consider the arguments raised in the defendant's May 14, 1996, letter, which was filed after the oral argument in this matter.