LEROY A. GLINES *vs.* BERRY BOX AND PACKAGE COMPANY, INCORPORATED.

Middlesex.    March 21, 1924. — April 11, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Contract*, Performance and breach, Modification. *Sale. Evidence*, Relevancy and materiality. *Practice, Civil,* Question for jury.

Where, at the trial of an action of contract against a corporation for alleged breach of an agreement by the defendant to receive and pay for certain lumber to be shipped to it by the plaintiff, the judge without objection or exception by either party instructed the jury regarding terms of payment in the agreement, that " if the defendant did not pay for the shipments within fifteen days from the date of shipment or bill of lading as he received the goods within the fifteen days, the legal effect of the agreement is to make the price of the shipment payable at the expiration of the fifteen days," such instruction became the law of the case and excluded any construction of the contract which would give the defendant a reasonable time after the delivery in which to pay, with the privilege of making a certain deduction for payment within fifteen days.

At the trial of the action above described, it appeared that the defendant had not been punctual in its payments for certain shipments made by the plaintiff, and the defendant contended that there was an implied modification of the contract in writing which extended the time of payment for the various shipments. The only possible evidence of such an implied modification of the contract was found in the fact, and the inference to be drawn therefrom, that the plaintiff made no complaint to the defendant as to the delayed payments until he refused, on the ground of such nonpayments, to accede to a request by the defendant for a certain shipment. *Held*, that in the circumstances the question, whether there was such an implied modification of the contract in writing, was a question of fact for the jury and not one of law for the judge.

In the action above described, it was *held*, that under G. L. c. 106, § 34, (2), the question, whether failure by the defendant to pay for the instalments of lumber was a material breach, which justified the plaintiff in refusing to make further shipments, was a question of fact for the jury and not one of law for the judge.

Testimony, at the trial above described, as to the market value, during the period covered by the contract, of the lumber of the kind therein described, was admissible.

CONTRACT for the breach of an agreement in writing by the defendant to receive and pay for certain lumber to be shipped to it by the plaintiff. Writ dated June 22, 1922.

In the Superior Court, the action was tried before *Sisk*, J. Material evidence and instructions to the jury are described in the opinion. The defendant moved that a verdict be ordered in its favor. The motion was denied. There was a verdict for the plaintiff in the sum of $1,413.89. The defendant alleged exceptions.

The case was submitted on briefs.

*H. D. Cabot & C. R. Cabot*, for the defendant.

*F. S. Harvey, J. J. Harvey & R. B. Walsh*, for the plaintiff.

PIERCE, J. This is an action of contract to recover damages for the refusal of the defendant to take and pay for one hundred fifty-one thousand, nine hundred and ninety-two feet of one and one fourth inch box boards, and fifteen thousand, eight hundred and sixty-two feet of one and one half-inch box boards, as the plaintiff alleges it agreed to do, under the terms of a written contract which reads as follows:

" Aug. 3, 1920　　　　　　　　　　　　Order No. 74.
Leroy A. Glines
Canterbury, N. H　　　　　　　　Via B. & M.
　　　　　　　　　　　　　　　　　Via Boston
　　　　　　　　　　　　　　　　　B. & A. Delivery

200,000 ft. 1¼″ and 100,000 ft. 1½″ log run R. E. pine box boards @ 35.00, F. O. B. Northfield, N. H., less 2% — 15 days from shipment or B. L. shipments to be made during last half of 1920 and first half of 1921. Load heavily to gain wt. acct. freight. Boards to be those as examined.

　　　　　　　　　Accepted　　　　　Leroy A. Glines
　　　　　　　Berry Box & Package Co.,
　　　　　　　　　per J. H. Berry, Prest."

The defendant admits it made the contract with the plaintiff, denies that it has failed in any way to comply with the terms of the contract, and alleges that the plaintiff did not keep and perform his part of the contract, in that he neglected and refused to ship the lumber, as and when ordered by the defendant, in compliance with the terms of the contract.

Upon the question, whether the contract provided for

payment on delivery or for a period of credit and the limits of such credit, the judge, without objection or exception, construed the contract; and in accordance therewith instructed the jury as follows: " Now, where a contract is silent as to the time of payment, the legal effect of such a contract is to make the price of goods payable on delivery. But in this case the contract is not entirely silent as to the terms of payment. It does provide that at its election the defendant can pay for each shipment within fifteen days from date of shipment or bill of lading less two per cent. So you see obviously there was a credit at least of fifteen days there from the date of shipment or the date of the bill of lading. . . . So you see that these men started at least upon a fifteen day credit; that is, as an inducement to the defendant to pay its bill within fifteen days from the date of shipment or the date of the bill of lading it had the right to deduct therefrom two per cent of the face of the bill. Now, if the defendant did not pay for the shipments within fifteen days from the date of the shipment or bill of lading as he received the goods within the fifteen days, the legal effect of the agreement is to make the price of the shipment payable at the expiration of the fifteen days." This construction is the law of the case, and excludes any construction of the contract which would give the defendant a reasonable time after delivery in which to pay, with privilege of deducting two per cent for payment within fifteen days.

Without objection or exception, the judge then instructed the jury as to a modification of the contract in reference to the payments for the various shipments in case the defendant did not pay for the same within the fifteen days as provided in the agreement. " . . . then you will deal with the contract as though the agreement was written for a longer period. . . . Now if you find there was such modification, that is, implied modification of the writing between the parties, then you will determine how much time the defendant was to have in which to pay for the shipments beyond the fifteen days mentioned in the agreement. Having determined that, then you will find whether the defendant has paid for the shipments within the extended time."

At the close of the evidence, the defendant moved for a directed verdict. The jury found for the plaintiff.

. The admitted facts show that eleven carloads were shipped to the defendant from October 6, 1920, to March 31, 1921, and that no lumber was afterwards shipped. It is further admitted that, with the exception of the first shipment on October 6, 1920, no payments were made within fifteen days after the date of shipment, the date of the bill of lading, or within fifteen days after the receipts of the remaining ten cars of lumber.

On May 18, 1921, the defendant wrote the plaintiff as follows: " We would like to have one good car of 1¼ Pine thoroughly dry and we would be pleased if you would kindly ship this to us at your early convenience and oblige. We have a lot of this thickness on hand but it is not good enough for the purpose for which we require it, therefore can only use one car at this time. Business is bad as yet we having been compelled some time ago to hold up all shipments of .lumber and are not able as yet to resume except for this one car. Should there be .any reason why you cannot load this out by next Monday or Tuesday please let me know by return mail. We are liquidating most of our lumber stock in order to turn it into cash that we might be in a better position to keep in closer touch with our shippers so far as settlements on shipments are concerned, our present stocks being entirely too large and out of keeping with the times."

On May 23, 1921, the plaintiff in reply to the defendant's request as stated in the above letter sent, and the defendant received, a post card which reads, " I do not care to load the car you ask for. There [are] 3 cars now a month overdue." The cars referred to in the post card were cars loaded with lumber shipped to the defendant on March 15, 1921, March 29, 1921, and March 31, 1921. These cars, respectively, were received by the defendant on March 22, 1921, April 8, 1921, April 12, 1921; and on the defendant's own tally of the number of feet of lumber represented an unpaid total sum of $1,271.58. The car of lumber ordered out by the defendant on May 18, 1921, was the equivalent in money value to at least $300. On cross-examination the

defendant's president, in substance, testified that he did nothing in the way of getting in touch with the plaintiff after the receipt of the plaintiff's post card, dated May 23, 1921, other than to pay for one car of lumber on June 9, 1921 (which car was the car received by the defendant on March 22, 1921), until July 15, 1921, when he sent to the plaintiff the following letter. " Concerning the balance of lumber still due on our order Number 74, which you refused to ship, wish to advise that we have been compelled to buy and replace this stock from other sources, therefor will ask that you kindly consider the remainder of our transaction with you cancelled. Are sorry that we are forced to accept your suggestion, but we had to have lumber and cannot control the conditions of the times that might otherwise enable us to be more prompt in our remittances, which action you have required. The future is anything but promising, as you surely know, and we will only be able to go along and treat financially with our shippers, to the extent that our trade treats with us."

The plaintiff testified that, after receiving this letter, he telephoned to the defendant the last part of August, 1921, and asked Berry to send him the pay for the cars overdue, and asked him what he was going to do about the lumber not yet taken; and that Berry replied that he would look the matter up, send the pay, and would call on the plaintiff within a short time. The plaintiff further testified that Berry did not call. Berry denied there was such a conversation. It was agreed at the trial that the shipment of March 15, 1921, was paid for on June 9, 1921; that the shipment of March 29, 1921, was paid for on July 11, 1921; and that the shipment of March 31, 1921, was paid for on August 31, 1921.

On the motion for a directed verdict for the defendant the first question is, Was the judge, as matter of law, bound to instruct the jury that there was an implied modification of the written agreement extending the time for payment of the various shipments? The only possible evidence of such an implied modification of the contract is found in the fact and the inference to be drawn therefrom that the plaintiff

made no complaint to the defendant of the delayed payments until he refused, on the ground of such nonpayments, to accede to the request of the defendant contained in the letter of May 18, *supra.* In these circumstances the inference of a change in the terms of the original contract raised a question of fact and not one of law. And the judge submitted this question to the jury with full and adequate instructions, which were not excepted to.

Assuming that the original contract was not impliedly modified as to the time of payment, that payments were not made (as it is agreed they were not) within fifteen days from the date of shipment and date of the bill of lading, and that the sales act governs, as is contended by both the plaintiff and the defendant, the question presented is, Was the plaintiff, as matter of law, bound to continue to make shipments to the defendant on request or could he defer additional shipments until overdue payments were made, there being no evidence that the plaintiff repudiated or cancelled the contract other than may be inferred from his refusal to deliver or ship the car ordered out by the defendant on May 18, 1921? G. L. c. 106, § 34, cl. 2, reads: " If there is a contract to sell goods to be delivered by stated instalments, which are to be separately paid for, and the seller makes defective deliveries in respect of one or more instalments, or the buyer neglects or refuses to take delivery of or pay for one or more instalments, it depends in each case on the terms of the contract and the circumstances of the case whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken." Under the statute quoted, whether the failure of the defendant to pay for the instalments of lumber was a material breach, which justified the plaintiff in refusing to proceed further, was a question of fact for the jury and not one of law for the court. *Stephenson* v. *Cady,* 117 Mass. 6.

There was no error in receiving the testimony of the witnesses as to the market value of lumber at different times

between October, 1920, and July 15, 1921. The defendant admitted that there was a drop in the market price prior to May 23, 1921, and its counsel said, " Oh, I admit that it's just a question of how much." There was evidence that the drop in market price was the same on May 23 and July 15, 1921. It is plain the action of the market preceding May 23, 1921, was a material factor in determining whether the nonpayment for the three shipments was so material as to justify the plaintiff in his refusal to make further deliveries. *National Machine & Tool Co.* v. *Standard Shoe Machinery Co.* 181 Mass. 275. *Eastern Forge Co.* v. *Corbin*, 182 Mass. 590. *Dudley* v. *Wye*, 230 Mass. 350. *Stephenson* v. *Cady, supra.*

*Exceptions overruled.*