GUIDO CETRONE *vs.* PAUL LIVOLI, INC.
(and a companion case[1]).

Middlesex.    April 7, 1958. — June 2, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Contract,* Construction, Building contract, Performance and breach.
   *Evidence,* Extrinsic affecting writing. *Damages,* For breach of contract.

A written agreement by a contractor to "install the bituminous concrete
   walks and driveways" at a development was not free from ambiguity,
   and conduct of the contractor and the developer showing that laying
   of "hot top" was intended as the contractor's undertaking but not
   the preliminary spreading of gravel might be resorted to in construing
   the agreement. [609–610]
Evidence that before the date for completion by a contractor of a written
   agreement to lay "hot top" on the walks and driveways at a develop-
   ment the developer and the contractor orally agreed that the contractor
   should also do the preliminary spreading of gravel and the developer
   should pay him therefor but that subsequently the developer refused
   to supply further gravel and ordered the contractor to leave the job
   warranted conclusions that the developer was precluded from recover-
   ing from the contractor for his failure to lay "hot top" and was liable
   to him for breach of the written agreement and on an account annexed
   for the gravel spreading done. [608, 610]
Loss of profits which would have been derived by a contractor from per-
   forming a construction contract was a proper element of damages in
   an action by him for breach of the contract in that he was wrongfully
   prevented from performing it. [610]

TWO ACTIONS OF CONTRACT. Writs in the Second District
Court of Eastern Middlesex dated June 20, 1956, and
July 25, 1956.

The actions were heard by *Moynihan,* J.

*William S. Monahan,* for Paul Livoli, Inc.

*Marvin H. Margolies,* for Cetrone.

SPALDING, J.   About May 15, 1956, Guido Cetrone exe-

---

[1] The companion case is Paul Livoli, Inc., *vs.* Guido Cetrone.

cuted and delivered to Paul Livoli, Inc., hereinafter called
the corporation, the following:

"Re: Granite Park,
Braintree, Massachusetts
"Gentlemen:

"We propose to install the bituminous concrete walks and
driveways at the above-captioned development for the price
of 50¢ a square yard.  All work is to be done in a good work-
manship manner and guaranteed for a period of one (1)
year after installation.  All walks and driveways to be in-
stalled in a standard two (2) coat paving method.

"We will furnish all labor necessary to complete said
work, and all materials are to be supplied by you.  We will
commence work at once and complete the entire job not
later than June 15, 1956.

Cetrone and Son
By: Guido Cetrone (Signed)"

The proposal was accepted in writing by the corporation.
Alleging a breach of this contract on the part of the corpora-
tion, Cetrone brought this action of contract.  The declara-
tion originally contained three counts, but we are concerned
only with the second and third, the first having been waived.
The second count alleges a breach of the written agreement
set forth above.  The third count, under an account annexed,
seeks recovery of $1,550 for grading.  The corporation
brought a cross action alleging breach of contract on the
part of Cetrone in connection with the above contract.  The
cases were tried together and the judge in the original action
found for Cetrone in the sum of $1,196.60 on the second
count and in the sum of $1,200 on the third count.  In the
cross action brought by the corporation there was a finding
for Cetrone.  A report to the Appellate Division was dis-
missed and the corporation appealed.

A summary of the pertinent evidence is as follows: When
Cetrone arrived on the job to start work under the contract
"none of the gravel was graded or ready for hot top."
Cetrone talked with Paul Livoli, and told him that "nothing

was ready for the laying of hot top, and that . . . [it] could not be spread." Livoli told him to spread gravel and to work where he could, and that he would be paid for "all the labor used in spreading the gravel." Under the contract, according to Cetrone, he was only required to spread black top. "[A]ll preparation in getting the walks and ways ready for black top was to be done by . . . [the corporation]." Cetrone brought six men to the job and for a period of fourteen days they spread gravel.

On June 1, 1956, Cetrone's men were ordered off the job by Livoli. Later that day Cetrone saw Livoli and it was agreed that they would meet on the following Monday "to work the matter out," but Livoli failed to keep the appointment. Cetrone did not see Livoli again and his men did not return to the job. Cetrone testified that he paid his men $1,550 for spreading the gravel and that this was a fair and reasonable charge. The area on which black top was to be placed, according to Cetrone, was 6,943 square yards and his net profit would be thirty cents per square yard. A witness for the corporation testified that the area was 5,983 square yards.

There was evidence introduced by the corporation to the effect that prior to the making of the contract Cetrone was told that he was to spread the gravel and was given the name of the person who would furnish it. There was also evidence which would warrant the conclusion that Cetrone's men were ordered off the job because they were slow and inefficient. According to one witness in the trade the spreading of gravel constituted part of the job of laying black top and according to another "hot top men do hot topping without doing rough grading."

The written agreement here is not so comprehensive, nor is the term "install the bituminous concrete walks and driveways" so clear and free from ambiguity, that the conduct of the parties cannot be resorted to for aid in its construction. *Anderson* v. *Sopp,* 295 Mass. 97, 102. *Coleman Bros. Corp.* v. *Commonwealth,* 307 Mass. 205, 209–210. From the evidence

most favorable to Cetrone it could have been found that the parties intended that the gravel work was to be done not as part of the written agreement but under the subsequent oral agreement. See *Goldstein* v. *Katz*, 325 Mass. 428, 430. Whether we view this subsequent oral agreement as a modification of the earlier agreement or as a separate contract the same result follows. That result is that the corporation agreed that (1) Cetrone was to do the gravel work for which he would be paid, and (2) Cetrone was to put on the "hot top" for the price fixed in the contract.

The corporation has argued many questions in its brief but in essence the questions here are relatively simple. After determining what the parties had agreed to, the judge then had to decide whether there had been a breach of the contract and by whom. There was evidence from which he could find that before the completion date in the written agreement the corporation refused to supply Cetrone with the material for the gravel work and ordered him and his men to leave the job. This was a question of fact and if the evidence was believed — as by the finding it obviously was — the judge could have concluded that there had been a breach of the contract on the part of the corporation of such a nature as to preclude recovery under it by the corporation and excuse Cetrone from further performance. *Bucholz* v. *Green Bros. Co.* 272 Mass. 49, 52–53.

With respect to the written agreement Cetrone was prevented from performing by the corporation (or so it could have been found) and he was entitled to be placed in as good a position as he would have been in had the contract been performed. Restatement: Contracts, § 315. *St. John* v. *St. John*, 223 Mass. 137. *Associated Perfumers, Inc.* v. *Andelman*, 316 Mass. 176, 185–186. Such damages would include loss of profits, and that was the basis of the award under count 2.

The judge acted on numerous requests for rulings presented by both parties but we do not deem it necessary to discuss them other than to say that we perceive no error in the manner in which he dealt with them.

Other questions argued by the corporation and not dealt with in this opinion have not been overlooked; they do not require discussion.

*Order dismissing report affirmed.*