EDWIN R. TRAFTON, executor, *vs.* ELSIE M. CUSTEAU.

Suffolk.    December 3, 1958. — January 12, 1959.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Contract,* What constitutes, Consideration, Implied.

A finding that the mortgagor under an unrecorded mortgage on a house securing an interest free long term note, while negotiating for a sale of the house, agreed with the mortgagee for consideration to pay the entire unpaid balance of the mortgage indebtedness upon completion of the sale was warranted by evidence of a letter written by the mortgagor at a time when no payment was due on the note requesting the mortgagee to mail the mortgage to her and stating "After everything is completed, I will settle with you," and of surrender of the mortgage by the mortgagee in reliance on that statement; and the agreement was not too vague to be enforced against the mortgagor after completion of the sale of the house. [307–308]

An action for money had and received did not lie in favor of a mortgagee of a house against the mortgagor after the defendant had failed to fulfill a promise to the plaintiff to pay off the entire unpaid balance of the mortgage indebtedness upon sale of the house by the defendant where there was nothing to indicate that the defendant held any proceeds of the sale which in equity and good conscience belonged to the plaintiff. [308]

CONTRACT. Writ in the Municipal Court of the City of Boston dated November 26, 1956.

Upon removal to the Superior Court the action was tried before *Nagle*, J.

*William J. Ryter*, for the plaintiff.

*Anthony Brayton*, for the defendant, submitted a brief.

RONAN, J.   This is an action of contract in three counts upon an indebtedness originally arising out of a loan made by the plaintiff's testate to the defendant.   The case is here upon the plaintiff's exceptions to the direction of verdicts for the defendant upon all three counts of the declaration.

The salient facts are these:   On December 4, 1953, Archibald Fraser, the plaintiff's testator, a man then seventy-five years of age but deceased since the trial (hereinafter called the plaintiff), lent the sum of $2,175 to the defendant with whom he had been on friendly terms for years and whom he treated "like a daughter."   In return he took an interest free note payable in twenty-two years from that date with annual payments of $100 on principal.   He also took a second mortgage on the defendant's house in West Roxbury to secure the note.   The mortgage was not recorded. Payments of $100 each were made on the first and second anniversaries of the date of the note, on December 4, 1954, and on December 4, 1955.   Sometime in 1956 the defendant was negotiating for the sale of her house on which the plaintiff held the unrecorded mortgage.   On July 20 of that year, the defendant wrote the plaintiff in part:   "I believe you have the deed . . . so will you please mail the deed to me . . . so I will have same with me.   After everything is completed, I will settle with you . . . ."   It is clear that by "the deed" she meant the mortgage deed held by the plaintiff.   She testified at the trial:   "I was all confused at the time, and I didn't know the difference between a deed and a mortgage note . . . ."   In answer to her letter the plaintiff sent the mortgage deed to her by mail.   At the time when the defendant wrote the letter asking for its return and promising to "settle with" the plaintiff after she had sold her house, no payments were due on the note.   The defendant testified that by the word "settle" she "thought that if there was anything due on the mortgage note, when

I passed the papers, that I would pay Mr. Fraser, but I didn't know that I owed anything on the note or not." The plaintiff testified, however, that when he next saw the defendant after he had mailed her the mortgage deed, "I told her I'd been there [at her new address] for my money." He also testified that he sent her the mortgage in reliance upon her promise to "settle" with him, that is, to pay the loan.

A suggestion of death of the plaintiff on December 14, 1957, was filed and the executor has prosecuted these exceptions.

We are of the opinion that there was error in the ordering of verdicts for the defendant on the first and third counts.[1]

There was evidence that the defendant believed that the return of the unrecorded mortgage would facilitate the contemplated sale of her house and stated that if the plaintiff would give her the mortgage "I will settle with you." The jury could disbelieve her explanation that she did not know the difference between a deed and a mortgage note, as they could find that she already had previous experience with a savings bank which held the first mortgage upon the same premises, and that she had already made two payments on the instant mortgage. The jury could find that she knew the relationship between the note and mortgage she had given the plaintiff.

The defendant contends that there was no agreement for the acceleration of the payment of the mortgage indebtedness and that if any arrangement was made concerning that loan it was too vague and indefinite to constitute a contract. Both parties testified as to their intentions in the transaction which resulted in the return of the mortgage instrument to the defendant. Where the terms of a written contract are ambiguous, both parties may testify as to what they understood by the terms of the contract when they exe-

---

[1] These counts alleged in substance that the plaintiff surrendered the mortgage to the defendant in reliance on her assurance that (count 1) "the balance of the mortgage note would be paid" or that (count 3) she "would settle up the entire loan," and that after selling her property she refused to pay the plaintiff such balance. — REPORTER.

cuted it. The jury will then determine what were its terms and apply the law to such facts as they find comprised its terms. *Rizzo* v. *Cunningham*, 303 Mass. 16, 20. The jury could have found what arrangement the parties had in mind. Upon the evidence the contract was not too vague to be enforced. The subject was fully discussed by Rugg, J., in *Silver* v. *Graves*, 210 Mass. 26, 28–30. *Noble* v. *Mead-Morrison Mfg. Co.* 237 Mass. 5, 18–19. There was evidence that the plaintiff gave up the mortgage at the defendant's request and in reliance upon her promise to "settle" with him on the mortgage indebtedness. The surrender of his security would be adequate consideration for her promise. *Devine* v. *Murphy*, 168 Mass. 249, 250. See *Stebbins* v. *Smith*, 4 Pick. 97; Restatement: Contracts, § 76 (a). As was said in *Devine* v. *Murphy*, at p. 250, the giving up of a mortgage in return for a promise by the mortgagor "is an ordinary case of a simple contract for a valuable consideration."

With respect to the second count of the plaintiff's declaration, for money had and received, such an action "may in general be maintained whenever one has money in his hands belonging to another which in equity and good conscience he ought to pay over to the other. . . . The action may nevertheless be maintained where no money has actually passed but something has been received as a credit which is the equivalent of money." *Sherman* v. *Werby*, 280 Mass. 157, 160–161. "Where property belonging to the plaintiff has been reduced to money after it was received by the defendant but before the action is brought, money had and received lies." *Devlin* v. *Houghton*, 202 Mass. 75, 78. *Simmons* v. *Barns*, 263 Mass. 472, 475. But here we find nothing in the record to indicate that the defendant held proceeds that remained from the sale of her house part of which in equity and good conscience belonged to the plaintiff. The judge was correct, therefore, in directing a verdict in favor of the defendant on the second count.

> *Exceptions sustained as to the first and third counts; exceptions overruled as to the second count.*