**FOUNDATION SOFTWARE LABORATORIES, INC.**

v.

**DIGITAL EQUIPMENT CORPORATION.**

Civ. No. L–91–1420.

United States District Court, D. Maryland.

Dec. 3, 1992.

Kimberly A. Leaman and Kimberly D. Marshall, Greenbelt, MD, for plaintiff.

Laura Hamilton and Kenneth M. Lyons, Washington, DC, for defendant.

## MEMORANDUM

LEGG, District Judge.

The Court is called upon to decide the motion for summary judgment filed by the defendant, Digital Equipment Corporation ("Digital"). This action, which arises under 28 U.S.C. § 1332 (diversity of citizenship), seeks damages for alleged breach of contract and breach of warranty, as well as for alleged negligent misrepresentations. For the reasons set forth below, the Court will, by separate order, GRANT the defendant's motion as to all counts of the complaint.

## I. FACTS

Plaintiff, Foundation Software Laboratories, Inc. ("FSLI"), is a Maryland corporation that develops and sells legal and accounting applications software programs. Digital is a Massachusetts corporation that manufactures and sells computer hardware and software worldwide.

In 1987, Michael Mileski, the president of FSLI, approached Digital about forming a contractual relationship that he viewed as mutually beneficial. Mileski attempted to interest Digital in what he termed a "software partnership", in which Digital would provide marketing and other services to FSLI, and FSLI, in return, would promote sales of Digital hardware by attracting customers interested in FSLI's Digital-compatible software.

Digital, however, did not offer such a partnership to Mileski. Instead, Digital allowed FSLI the option of becoming a "Value Added Reseller" ("VAR"). A VAR is a software company that purchases Digital hardware at a discount and resells it in conjunction with the company's software. The VAR program afforded FSLI an entry-level, trial relationship with Digital which, if successful, might later be upgraded to a relationship akin to the "software partnership" Mileski initially envisioned.[1]

FSLI alleges, and Digital denies, that Mileski was told by Digital representatives that he was required to purchase Digital hardware before becoming a VAR.[2] FSLI further contends that Digital representatives helped select a "MicroVAX 2000" and assured Mileski that his software would operate well on the machine. Mileski, however, concedes that he did not describe FSLI's software package to Digital in any detail; nor did he show Digital a copy of his software.

The MicroVAX utilizes an operating system called VMS.[3] Before purchasing the MicroVAX, Mileski asked his chief computer technician, Masoud Pirnazar, to determine how difficult it would be to "port" (transfer) FSLI software onto the VMS system. FSLI software is written in the "C" computer language. A unit of the MicroVAX called the "C–Compiler" allows application software written in the C language to communicate with the hardware. In order for the C–Compiler to perform this task, it must contain certain "subroutines" that are compatible with the application software.

On deposition, Pirnazar testified that he was directed by Mileski to determine "how big a task it would be to get the software operational on VMS."[4] Pirnazar was aware of the possibility that FSLI's software might not port easily onto the MicroVAX and that "if it doesn't work, you're out of luck."[5]

To conduct this feasibility study, Pirnazar obtained from Digital a manual describing the C–compiler and the subroutines available on Digital's VMS operating system. Based on a cursory review of the manual, Pirnazar determined that the VMS system appeared to contain suitable subroutines for the FSLI software to port easily and run properly on the MicroVAX. Although the manual did not contain a few subroutines that were essential to the proper operation of FSLI software, Pirnazar assumed, albeit without verification, that these subroutines were basic and should be included in any "mature" operating system. Pirnazar advised Mileski that FSLI software should port successfully to the VMS system.

On January 27, 1988, FSLI contracted with Digital to become a VAR and to purchase a MicroVAX for $30,000. The contract signed by the parties is a standard, pre-printed "Digital Business Agreement" ("DBA"), which includes four addenda and two exhibits. These include an "OEM Addendum", an "Export Addendum", a "Dem-

---

1. Mileski Dep. at 50.

2. Digital representative Tricia Lombardo testified in her deposition that she never told Mileski that FSLI was required to purchase Digital hardware in order to become a VAR. Lombardo Dep. at 12.

3. An operating system (e.g., DOS), is a software package which allows applications software (such as Wordperfect) to run on computer hardware.

4. Pirnazar Dep. at 22.

5. Pirnazar Dep. at 30, 33.

onstration/Development Addendum", and Digital's "U.S. Standard Terms and Conditions". The several documents are incorporated into the DBA by its express terms. The DBA also contains an integration clause which provides that "this DBA constitutes the entire agreement between the parties with respect to its subject matter and supersedes all prior proposals, negotiations, and communications, oral or written." [6]

The DBA makes two express warranties with respect to Digital's products. In ¶ 9.1 of DBA Exhibit B, Digital warrants that its hardware will be free from defects in material and workmanship. Paragraph 9.2 of Exhibit B warrants that the hardware's operational software will conform to its published product description. FSLI concedes that neither warranty was breached. The DBA specifically and clearly disclaims the implied warranty of merchantability as well as the implied warranty of fitness for a particular purpose.

When Pirnazar attempted to run FSLI software on the MicroVAX, he encountered serious problems because, contrary to his earlier assumptions, subroutines vital to the proper operation of FSLI software were not included in the VMS operating system. Mileski contacted Digital, which sent its technician, Bob Herr, to render assistance. Herr suggested that FSLI modify its software in order to improve compatibility with VMS, or that FSLI pay Digital to add the required subroutines to the C–compiler. FSLI refused, contending that the Digital system was defective because the subroutines it lacked were basic, and that Digital should add the subroutines free of charge.

Mileski also contends that Digital failed to provide marketing and other support that Digital's representatives allegedly promised to him during contract negotiations. Digital makes two responses to this allegation: (i) that Mileski demanded a level of support never promised to FSLI and (ii) that Digital would have provided increased marketing support if FSLI had successfully ported its software. Because FSLI never achieved compatibility between its software and Digital's hardware, FSLI had no product for Digital to promote.

FSLI brought suit against Digital alleging (i) breach of contract for Digital's failure to provide hardware on which FSLI software could run (count I); (ii) breach of contract resulting from Digital's failure to provide promised marketing and technical support (count IV); (iii) breach of express warranty (count II); (iv) breach of implied warranty (count III); and (v) negligent misrepresentation (counts VII and IX).[7] These claims can be categorized as follows: (i) claims relating to the MicroVAX system's incompatibility with FSLI software and (ii) claims relating to Digital's failure to provide marketing and technical support.

Digital has moved for summary judgment with respect to all counts of the complaint. FSLI opposed the motion. On November 12, 1992, this Court heard oral argument.[8]

## II. DISCUSSION

### A. *Standards for Summary Judgment*

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if the moving party can show that "there is no genuine issue of material fact" and that it is "entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The movant bears the initial burden of showing, through evidence which would be admissible at trial, that "a fair-minded jury could [not] return a verdict for the [plaintiff]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If the movant makes this preliminary showing, the burden shifts to the opposing party to delineate, with

---

6. Defendant's reply memorandum exhibit C.

7. FSLI's complaint also alleged breach of fiduciary duty (count V), tortious interference with contract (count VI), and fraudulent misrepresentation (counts VIII and X). In its opposition to defendant's motion and at oral argument,

plaintiff conceded that there were insufficient facts in the record to support these claims. Accordingly, the Court will GRANT summary judgment in favor of the defendant with respect to counts V, VI, VIII, and X.

8. Neither party has requested a trial by jury.

supporting admissible evidence, an issue of material fact. The Court is required to view that evidence in the light most favorable to the non-movant. A "mere scintilla of evidence in support of the plaintiff's position," however, shall not suffice. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

**B.** *The Microvax Claims (Counts I, II, III, and VII)*

In Counts I, II, III, and VII, FSLI asserts claims relating to the MicroVAX system, which FSLI alleges is defective because it lacks certain subroutines on its C–compiler. Because an analysis of these claims involves overlapping issues and contractual provisions, the Court will first focus on claims predicated on the written language of the DBA and then consider claims based on oral assurances allegedly made by Digital.

**1. Claims based on the written agreements in the DBA**

■ Plaintiff bases its breach of contract and breach of express warranty claims on the "Demonstration/Development Systems Addendum" to the DBA.[9] According to FSLI, the addendum "implies that the system that Digital is agreeing to supply will be capable of running the software application developed by FSLI."[10] The Court disagrees and finds that it clearly does not.

The addendum states that the purchaser "agrees to use the Development system ... solely for the *development* of hardware or software to be used in its Application System(s)."[11] This standard form language clearly places the onus on the pur-

chaser to modify or adapt its product in order to render it compatible with Digital computers, rather than vice-versa; moreover, the language contains no guarantee that the modification process will be rapid or easy.[12] There is nothing in the DBA from which a trier of fact could conclude that Digital warranted or promised that FSLI software would run on the MicroVAX without adjustment. Accordingly, the Court will grant summary judgment in Digital's favor with respect to counts I and II (breach of contract and breach of express warranty).

**2. Claims Based on Alleged Oral Assurances**

*a. Contract and Warranty Claims*

■ FSLI contends that oral promises were made to it concerning the ease with which FSLI software would run on the MicroVAX system, creating enforceable express and implied warranty provisions. The Court disagrees.

The Court notes as a preliminary matter that the DBA is a fully integrated contract containing an integration clause. The Court also notes, and FSLI does not dispute, that paragraph 9.7 of Exhibit B to the DBA states, in clear and unequivocal language, that "the above warranties (¶¶ 9.1–9.6) are the exclusive warranties, and no other warranty, express or implied, shall apply. Digital specifically disclaims the implied warranties of merchantability and fitness for a particular purpose."[13]

■ Because the DBA is a fully integrated contract, the parol evidence rule excludes evidence of oral assurances made before, or contemporaneous with, the exe-

**9.** Although Exhibit B of the DBA contains express warranty provisions, including ¶ 9.1, which warrants Digital hardware against defects in workmanship and material and ¶ 9.2, which warrants that software will conform to its product description, plaintiff conceded at oral argument that it makes no claim under either ¶ 9.1 or ¶ 9.2.

**10.** Plaintiff's opposition at 13.

**11.** Defendant's reply memorandum exhibit C (emphasis added).

**12.** FSLI's software would operate on the Micro-VAX VMS system. The problem was that the software would not run fast enough when more

than one person at a time was "accessing" the system. This problem, however, did not apply to all application software run on the Micro-VAX. In his affidavit, Robert Herr testified that "numerous application software products that involve multiple users that originally were developed on [non–VMS] platforms ... have been successfully ported to the VMS C–environment." Robert Herr Aff. ¶ 1. Additionally, FSLI conceded at oral argument that, with modifications (which FSLI did not want to make), its software could have been speeded up sufficiently.

**13.** Defendant's reply memorandum exhibit C.

cution of the DBA. FSLI concedes that neither of the express warranties set forth in paragraph 9.1 or 9.2 of the DBA was breached. FSLI is, therefore, basing its claim on Digital's alleged assurances that the MicroVAX was the right computer for Digital's software. These assurances, however, contradict the clear and express written disclaimer of warranties in the contract, particularly the disclaimer of the warranty of fitness for a particular purpose, and add to the terms of the DBA. Thus, they constitute inadmissible parol evidence which this Court cannot consider. *O'Connell Mgm't Co., Inc. v. Carlyle–XIII Mgrs., Inc.*, 765 F.Supp. 779 (D.Mass.1991). Moreover, under Massachusetts law,[14], oral warranties made prior to the signing of a written agreement are superseded by the written contract and unenforceable. *Logan Equipment Corp. v. Simon Aerials, Inc.*, 736 F.Supp. 1188, 1198 (D.Mass. 1990).[15] Accordingly, the Court will grant summary judgment with respect to count III (implied warranty).

*b. Negligent Misrepresentation Claim* [16]

FSLI contends that Digital negligently assured Mileski that FSLI software would run easily on Digital hardware. In order to prevail on its claim of negligent misrepresentation, FSLI must show that: (i) Digital owed a duty of care to plaintiff; (ii) Digital negligently asserted a false statement; (iii) Digital knew that FSLI would rely on the statement; (iv) FSLI justifiably relied on the statement; and (v) FSLI suffered damages. *Weisman v. Connors*, 312 Md. 428, 540 A.2d 783 (1988).

The Court finds that FSLI has failed to establish a genuine question of fact regarding the issue of reasonable reliance. Assuming *arguendo* that false statements concerning the MicroVAX were made to FSLI, the record contains uncontroverted evidence that FSLI did not reasonably rely on these statements in deciding to purchase a MicroVAX.

FSLI conceded at oral argument that Digital provided FSLI computer technician Masoud Pirnazar with a manual that accurately described the subroutines available on the MicroVAX C–Compiler. Moreover, Mileski directed Pirnazar to determine "how big a task it would be to get the software operational on VMS," [17] before FSLI purchased the system. Thus, rather than relying on representations made by Digital, FSLI based its decision to purchase

---

**14.** Massachusetts law governs the breach of contract and breach of warranty claims in this case because the contract contained a forum selection clause. Maryland law governs the misrepresentation claims.

**15.** FSLI contends that several months after the contract was signed Robert Herr promised that Digital would soon improve its C–compiler and that this promise constituted an express warranty. Herr, however, denies making any such statement. Robert Herr Dep. at 18. Even assuming *arguendo* that Herr made such statements, the DBA states in bold print that "no deviation from this DBA shall be binding unless *in writing* and signed by the party against whom the deviation is sought to be enforced." (emphasis added). Thus, oral promises are insufficient, under the explicit language of the DBA, to vary or modify its terms.

**16.** Digital contends that FSLI waived all negligent misrepresentation claims when it renewed its contract with Digital in March, 1989. Digital cites *Computer Systems Engineering, Inc. v. Qantel Corp.*, 740 F.2d 59 (1st Cir.1984) and *Deutsch v. Health Ins. Plan of Greater New York*, 573 F.Supp. 1433 (S.D.N.Y.1983) as support for its contention. In *Deutsch*, however, the Court

merely held that the plaintiff had waived his misrepresentation claim for the period *following* the time at which he renewed his contract, not that he had forfeited his entire claim. 573 F.Supp. at 1441. More importantly, in *Qantel*, the Court found that the plaintiff's renewal of his contract did not affect his misrepresentation claim because it "did not know, nor reasonably should have known, prior to the renewal, ... that Qantel's representations ... were fraudulent." 740 F.2d at 66.

Here, plaintiff contends that it was not told until January, 1990 that Digital had no intention of adding to the system the subroutines plaintiff needed. Thus, plaintiff arguably did not know at the time the contract was renewed that the *Digital system would not be adapted to fit its needs.*

The Court also notes that at least one federal court has evidenced concern about allowing plaintiffs to introduce otherwise inadmissible parol evidence in order to prove a fraud claim. *Call Carl, Inc. v. BP Oil Corp.*, 554 F.2d 623 (4th Cir.1977). The Court will, however, address the merits of FSLI's negligent misrepresentation claims.

**17.** Pirnazar Dep. at 22.

a MicroVAX on its own feasibility study and Pirnazar's determination that the Digital system looked promising.[18]

Pirnazar admits in his deposition that he was well aware of the possibility that FSLI software might not port easily onto the MicroVAX and that "if it doesn't work, you're out of luck."[19] In addition, plaintiff conceded at oral argument that Mileski never demonstrated his software to Digital nor described it to Digital representatives in any detail. Thus, any reliance by FSLI on general assertions made by Digital concerning the MicroVAX was unreasonable. The Court finds as a matter of law that FSLI did not reasonably rely on statements made by Digital with respect to the Micro-VAX. Thus, the Court will grant summary judgment in Digital's favor on count VII.

### C. The Marketing Claims (Counts IV and IX)

#### 1. Breach of Contract

■ FSLI contends that Digital promised to provide it with marketing, technical, and operational support and that Digital failed to do so. FSLI points to a document called "Attachment I to the Demonstration/Development Addendum for Marketing Program Participants." FSLI asserts that the attachment reveals that Digital had a marketing program, and that parol evidence should be admitted in order to explain the meaning of the term "marketing program" in the contract.

FSLI contends that it received oral assurances from a number of Digital representatives that: (i) Digital would provide FSLI with the names, addresses and phone numbers of its sales personnel; (ii) Digital would inform industry consultants about FSLI's products; (iii) Digital would provide FSLI with a mailing list of industry consultants; (iv) Digital would feature FSLI software on industry periodicals; (v) Digital would act as a prime vendor for FSLI; and (vi) Digital would allow FSLI access to its facilities in order to conduct demonstrations of its software. FSLI further contends that few, if any, of these services were provided by Digital.[20]

Digital agrees that it orally promised to provide marketing services to FSLI, but it denies making the detailed assurances specified by Mileski. This Court finds that there is no evidence from which a finder of fact could conclude that a breach occurred. The record contains uncontroverted evidence that FSLI never adapted its software package to run smoothly on Digital's hardware. Because FSLI never developed a software product suitable for use on Digital's VMS system, Digital's refusal to assist FSLI in marketing its software was not a breach of contract. Simply put, FSLI did not have a viable Digital-compatible product to sell.

■ Furthermore, in October 1988, after writing a letter to Digital's president complaining about Digital's failure to provide marketing support[21], Mileski received a letter from Digital that explicitly outlined the services Digital would and would not pro-

18. The Court notes that Pirnazar hoped to borrow or gain access to a MicroVAX in order to test FSLI software on the system before FSLI made a $30,000 purchase. Pirnazar Dep. at 33. Unfortunately, Pirnazar either did not clearly communicate his request to Mileski or Mileski rejected Pirnazar's advice, because such a test was never conducted. The Court finds that FSLI's failure to test its software prior to purchasing the system is further proof that any reliance on Digital's oral representations was unreasonable.

19. Pirnazar Dep. at 30, 33.

20. At oral argument, FSLI pointed to only one instance in which Digital failed to provide marketing support. The incident involved Digital's refusal to make a demonstration facility available at the date and location Mileski requested. In September 1989, Mileski sought to utilize a Digital Demonstration facility in Pittsburgh to demonstrate its product to the law firm Kirkpatrick & Lockhart. Digital's Pittsburgh office told him that he needed to contact Digital's Greenbelt, Maryland office because the Pittsburgh office lacked the hardware FSLI required. The Greenbelt office then told Mileski to use the Pittsburgh facility, and the demonstration never took place. Mileski Dep. at 58–62.

Plaintiff, however, failed to point to any contract language or other evidence suggesting that Digital promised to make such facilities available. Moreover, plaintiff failed to show that it suffered damages because the facilities were not made available.

21. The letter enumerates many of the specific requests Mileski complains were not honored.

vide.[22] Five months later, with full knowledge of Digital's definition of its "marketing program", FSLI renewed its contract with Digital, thereby assenting to the limited marketing assistance that Digital would provide and waiving any objections.[23]

Accordingly, the Court will grant summary judgment in Digital's favor with respect to count IV.

### 2. Negligent Misrepresentation

Finally, FSLI contends that Digital negligently promised to provide marketing and technical support which it never intended to provide. There is no evidence in the record, however, that suggests that Digital mistakenly conveyed promises to FSLI that were at variance with its true intentions. Moreover, because FSLI never developed a product that Digital could help market, there is no evidence that Digital's promises to provide marketing support were false statements. Accordingly, the Court will grant Digital's motion with respect to count IX.

---

**22.** *Defendant's reply memorandum exhibit A.*

**23.** *The Pittsburgh incident took place after FSLI renewed the contract.*